IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| GERALD PENN,<br><br>          Plaintiff,<br><br>  vs.<br><br>NATIONAL INTERSTATE INSURANCE COMPANY and CINCINNATI INSURANCE COMPANY,<br><br>          Defendants. | CV 12-18-BU-DLC-CSO<br><br><br>**ORDER and FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Gerald Penn ("Penn") states the following claims against Defendants National Interstate Insurance Company ("National") and Cincinnati Insurance Company ("Cincinnati"): (1) violation of the Montana Unfair Trade Practices Act ("UTPA") by failing to attempt to effectuate a settlement when liability was reasonably clear and without conducting a reasonable investigation based upon all available information; and (2) breach of their common law duty to deal reasonably with him after he was injured in a bus crash involving a bus company that they insured. *Cmplt. (DKT 4) at ¶¶ 20, 24, and 27.*

The following motions are pending:

1.  Penn's "Motion for a Preliminary Legal Ruling or in the Alternative a Motion *in Limine*, that as a Matter of Law, Tucker Transportation was Negligent Per Se and No Superseding, Intervening Cause Defense Existed" (*DKT 25*);

2.  National's and Cincinnati's joint motion for a protective order (*DKT 31*); and

3.  Penn's motion to strike both National's and Cincinnati's eighth affirmative defenses of "advice of counsel" (*DKT 36*).

Having considered the parties' arguments, the Court addresses these motions as set forth below.

## I.    BACKGROUND[1]

On November 16, 2007, Penn was a passenger in a Tucker Transportation, Inc. ("Tucker Transportation") bus.  The bus hit a deer, went out of control, overturned, and caused injuries to Penn.

Penn sued Tucker Transportation in state court ("the underlying action") alleging negligence and negligence *per se*.  On Penn's motion, the state court granted summary judgment in Penn's favor finding

---

[1]The background facts and procedural history are from the pleadings, the parties' preliminary pretrial statements, and Penn's stipulations of fact filed on August 28, 2012 *(DKT 24 and 26-3)*.  The facts, for the most part, are not disputed except where indicated.

Tucker Transportation negligent per se. The state court denied Penn's summary judgment motion on Tucker's affirmative defense of intervening, superseding cause. Penn's petition to the Montana Supreme Court for a writ of supervisory control over the latter order was denied.

In the same state court action, Tucker Transportation filed a third-party complaint against Diamond Coach ("Diamond") asserting indemnity and contribution claims. Tucker Transportation alleged that Diamond defectively designed the bus and that the defective design caused the accident and injuries. Diamond, in turn, sought indemnity and contribution from DAK Plastics, Inc. ("DAK"), a component manufacturer, and from Tucker Transportation. Penn also filed an amended complaint against Diamond asserting, in the alternative, claims of strict liability and negligent design.

In October 2011, Tucker Transportation, Diamond, and DAK settled all claims among them relating to bus passengers involved in the accident. In January 2012, Penn and Tucker Transportation settled Penn's claims against Tucker Transportation.

On February 29, 2012, Penn filed this action in state court. *DKT 4.* On March 21, 2012, National, with Cincinnati's consent, removed the case to this Court. *DKT 1.*

## II. DISCUSSION

### A. Penn's Motion for Preliminary Legal Ruling & Alternative Motion in Limine

#### 1. Parties' Arguments

Penn seeks a ruling that, "as a matter of law, Tucker Transportation was negligent per se, that such negligence per se caused Penn's damages, as the insurers have admitted, and that the alleged defense of superseding, intervening cause was, as a matter of law, non-viable." *Penn's Mtn. (DKT 25) at 2.* He advances three principal arguments in support of his position that Tucker Transportation was negligent per se and that its negligence per se caused his damages.

First, Penn argues that Tucker Transportation was negligent per se based on *Craig v. Schell*, 975 P.2d 820 (Mont. 1999) and *Kinser v. Billings Overhead Door Co.*, CV 03-31-BLG-RFC (D. Mont. 2004).

*Penn's Br. in Support (DKT 26) at 6-16.*[2]  He argues *Craig* established that Montana "drivers of motor vehicles must anticipate certain obstacles, as well as adverse driving conditions, and when they fail to do so and violate a motor vehicle statute, the violation constitutes negligence *per se*."  *Id. at 9* (emphasis in original).  Penn argues that this Court followed *Craig* in *Kinser,* where Judge Cebull "fully realized it is no defense for a driver, after hitting a deer or another object on the road, which disabled the vehicle, to claim an excuse for violating a traffic statute."  *Id. at 14.*

In the case at hand, Penn argues, it is undisputed that Tucker Transportation's bus driver "struck the deer, lost control of the bus, swerved several times and crossed from the right lane of traffic into the left lane of traffic, before going into the median where the bus rolled causing Penn's injuries."  *Id. at 9.*  The driver violated Montana traffic statutes, Penn argues, and thus was negligent per se under *Craig.*  *Id. at 10.*

Second, Penn argues that National and Cincinnati have now

---

[2]Citations to page numbers are to those designated by the Court's electronic filing system.

"admitted that Tucker Transportation's negligence *per se* was a cause of Penn's injuries." *Id. at 6* (emphasis in original). Thus, he argues, National and Cincinnati "had no basis whatsoever for contesting liability in Penn's claim, let alone a reasonable basis[ ]" and that "[t]he Court should so rule." *Id. at 15.*

Third, Penn argues that National and Cincinnati had no reasonable basis for contesting liability in the underlying case because they chose to settle it rather than appeal the state court's ruling that Tucker Transportation was negligent per se. *Id.* He argues that because the law in *Craig* and *Kinser* was clear, National and Cincinnati had no basis to appeal the state court's ruling. Further, Penn argues that the insurers' decision to settle with him "at the eleventh hour" for an amount that "they should have paid two and a half years earlier[ ]" shows that an appeal of the state court's decision on negligence per se would not have made their "position any stronger where they denied liability under the admitted facts of this case." *Id. at 15-16.* Thus, Penn argues, "the insurers['] right to appeal was clearly waived and/or formed no basis to deny liability as a matter of law." *Id. at 16.*

With respect to his motion for a preliminary legal ruling that the insurers' defense of superseding, intervening cause was non-viable, Penn argues that National and Cincinnati have admitted that Tucker Transportation caused his injuries. Thus, he argues, they cannot claim that a superseding, intervening cause cut off their liability. *Id. at 16-20.*

In response, National and Cincinnati argue that the Court should deny Penn's motion for two reasons. First, they argue, the motion is "untenable from a procedural standpoint." *Defts' Joint Resp. (DKT 38) at 2-3, 6-9.* They argue that Penn has provided no legal authority for seeking a "preliminary legal ruling" nor has he provided any basis for his alternative request for an order in limine because he has not sought the exclusion of any evidence. *Id. at 6-7.* Also, National and Cincinnati argue that, to the extent the Court could construe Penn's motion as one for partial summary judgment, it is "procedurally and substantively deficient and premature." *Id. at 7.* They argue that Penn has failed to comply with the Federal Rules of Civil Procedure and this Court's Local Rules for presenting such a motion and also argue that the motion is

premature in that it denies them "the opportunity to conduct discovery and present the fruits of discovery and expert testimony based upon the fruits of discovery." *Id. at 7-8.*

Second, National and Cincinnati argue, if the Court addresses Penn's motion despite its procedural deficiencies, the motion fails for substantive reasons as well. They argue that Penn's "entire motion and brief are based upon the false premise that [they have] admitted proximate cause for the accident." *Id. at 9.* They argue that they have not admitted, "either expressly or impliedly, that Tucker [Transportation] was the legal cause of the injuries to Penn." *Id.* They further request that, if their Answers are somehow construed to mean that they have admitted causation, they be permitted to amend their Answers. *Id. at 9-10.* They also note that they "clearly denied that Tucker [Transportation] was negligent *per se*, and that [they] were liable for all damages to [Penn] resulting from this negligence." *Id. at 10* (emphasis in original).

National and Cincinnati also argue that the issues respecting whether they had a reasonable basis in law or fact for contesting Penn's

claim or the amount of it in the underlying action cannot be resolved via Penn's instant motion. Instead, they argue, such issues "must be resolved by focusing on what [they] knew at particular points in time as shown by the investigative reports, evaluations and correspondence. That information is not currently before the Court." *Id. at 13* (citations omitted). They argue that "Penn fails to recognize that the analysis applied to UTPA claims is retrospective" and that "[r]easonableness must be measured based upon the information the insurer had available at the time it denied the claim and the law at that time." *Id.* (citation omitted).

National and Cincinnati also dispute Penn's assertion that they cannot contest liability because the underlying case settled and the state court ruling finding negligence per se was not appealed. They argue that "the fact a case settles is not indicative of bad faith." *Id. at 14-15* (citation omitted).

In reply, Penn argues that: (1) he relies on Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.2 in bringing this motion "to eliminate the insurers' frivolous defenses[,]" *Penn's Reply Br. (DKT 42)*

*at 1, 2-6*; (2) his alternative motion in limine seeks "to prevent the insurers from presenting any argument or evidence that they had a reasonable basis in fact or in law to deny liability in the underlying claim on the basis that Tucker Transportation was not negligent per se [and] that, as a matter of law, they had no defense of superseding intervening cause[,]" *id. at 1-2*; (3) *Craig* and *Kinser* lead to the conclusion that Tucker Transportation was negligent per se, *id. at 6-7*; and (4) the insurers' intervening, superseding cause defense fails because they have admitted causation, *id. at 7-9*.

### 2. <u>Analysis</u>

Penn's motion for a summary legal ruling is unusual to the extent it is brought under Fed. R. Civ. P. 16, which generally permits courts to "consider and take appropriate action" on "formulating and simplifying the issues" and "eliminating frivolous claims or defenses" at an early stage in the proceedings. While it is generally desirable to resolve issues at the earliest feasible time, the Court finds the authorities cited by Penn, two Iowa criminal cases, inapposite. Neither was decided pursuant to Rule 16.

The Ninth Circuit has recently noted that district courts do have broad discretion to manage discovery and to control the course of litigation under Rule 16. See *Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828, 833-34 (9th Cir. 2011). The Ninth Circuit noted in *Avila* that such orders are appropriate under Fed.R.Civ.P. 16(c)(2)(L) for "managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." *Id.* This court concludes that disputed legal issues in most instances should be addressed under the well-established procedures such as motions to strike defenses under Fed.R.Civ.P. 12(f) or motions for summary judgment or partial summary judgment under Fed.R.Civ.P. 56.

In any event, even if the Court concludes that Penn's motion is procedurally correct, it must be denied for the reasons that follow.

Penn bases his motion on his belief that National and Cincinnati have admitted in their answers and stipulated in their preliminary pretrial statements that Tucker Transportation's negligence per se caused his injuries. The Court is not persuaded by this assertion.

Paragraph 6 of Penn's Complaint alleges as follows:

On November 16, 2007, Gerald Penn, Plaintiff was riding as a passenger in a Tucker Transportation bus when the driver hit a deer, lost control of the bus illegally drove into the median, overturned and caused severe injuries to Plaintiff and other passengers. This set of facts clearly proved Tucker Transportation was negligent *per se,* and that Defendants were liable for all damages to Plaintiff resulting from this negligence.

In their answers to this paragraph, the Defendants' stated:

[National/Cincinnati] admits on November 16, 2007, Plaintiff Gerald Penn was riding as a passenger in a Tucker Transportation bus and the driver hit a deer and the bus went out of control, overturned, and caused injuries to Plaintiff and other passengers. [National/Cincinnati] denies the remaining allegations.

*National's Ans. (DKT 13) at ¶ 6; Cincinnati's Ans. (DKT 14) ¶ 6.*[3]

National's and Cincinnati's proposed stipulations in their preliminary pretrial statements contain identical language. See *Cincinnati's Prelim. Pretrial Stmt. (DKT 18) at § F, ¶4 and National's Prelim. Pretrial Stmt. (DKT 19) at § G, ¶4.* By denying "the remaining allegations," Defendants denied, *inter alia,* that the driver "illegally drove into the median," and denied that the facts "clearly proved

---

[3]National and Cincinnati subsequently filed amended answers that did not alter this language. See *National's Am. Ans. (DKT 33) at ¶6 and Cincinnati's Am. Ans. (DKT 34) at ¶ 6.*

Tucker Transportation was negligent *per se."*

In addition, the Court notes that National and Cincinnati have asserted the affirmative defense of superseding, intervening cause – both in the underlying action and in this action. *See DKTs 13 at 6, 14 at 6 (Seventh Affirmative Defense).* Because, as Penn concedes, this defense "will generally serve to cut off liability on the part of the defendant[,]" *DKT 26 at 16*, it is illogical to conclude that National and Cincinnati admitted that Tucker Transportation's negligence per se caused the accident while they were simultaneously urging their superseding, intervening cause affirmative defense. It has long been the rule that pleadings are properly read and considered as a whole and construed in their entirety. *See Evans v. International Typographical Union,* 81 F.Supp. 675, 680 (D.C. Ind. 1948).

Penn's motion also fails to the extent it seeks a preliminary legal ruling that Tucker Transportation was negligent per se. Although the state court in the underlying action ruled that Tucker Transportation was negligent per se, the issue was not appealed because the parties ultimately settled the case. Although Penn understandably maintains

that *Craig* and *Kinser* establish the law on the issue, the Court, on the current record and at this stage of the proceedings, cannot conclude as a matter of law that Tucker Transportation was negligent per se or that National and Cincinnati had no basis to appeal the state court's ruling. At this juncture in the proceedings, and without the benefit of a more fully-developed record, the Court cannot conclude that the facts of this bad faith case allow a seamless application of *Craig* and *Kinser* or whether those cases are factually or legally distinguishable from this one.

To the extent Penn seeks a motion in limine as described in his Reply Brief (see *DKT 42 at 1-2*), the Court denies it for the same reasons set forth above.

For all of the foregoing reasons, the Court will recommend denial of Penn's motion for preliminary legal rulings.

## B.    Defendants' Joint Motion for Protective Order

National and Cincinnati jointly move the Court to issue a protective order under Fed. R. Civ. P. 26(c). *Joint Mtn. for Protective Order (DKT 31).* They attached their proposed protective order to their

supporting brief.  See *DKT 32-1 at 1-5.*  Penn opposes the motion.
*Penn's Resp. Br. (DKT 35).*

Penn and National initially agreed on a proposed protective order.
*DKT 32-2.*  Before Cincinnati also agreed, the Court convened the
preliminary pretrial conference and discussed with counsel Ninth
Circuit case law on standards for protective orders.  As a result, the
parties again conferred, and agreed on all provisions except those
contained in the last two paragraphs of section 5.  See *DKT 32-1 at 4.*

The Court has considered the parties' arguments and concludes
that the disputed language strikes an appropriate balance concerning
the parties' ability to litigate their cases and the public's right to access
to information.  Thus, the Court will grant the motion and separately
file the protective order, making minor changes in the proposed
language.

The Court specifically notes that any motion to seal need not be
decided prior to the filing of the related motion.  If a motion to seal is
filed, the related motion may also be filed, following the procedures set
forth in the first paragraph of section 4.  *See DKT 32-1 at 3.*  This

should address Penn's concern that the process would otherwise be disruptive or delay proceedings.

    **C.**    **Penn's Motion to Strike Both National's and Cincinnati's Eighth Affirmative Defenses of "Advice of Counsel"**

        **1.**    **Parties' Arguments**

Penn moves for an order striking both National's and Cincinnati's "advice of counsel" affirmative defenses under Fed. R. Civ. P. 12(f). *Penn's Mtn. to Strike (DKT 36).* Penn argues that advice of counsel is an "insufficient defense" as a matter of law and that this affirmative defense is "redundant, immaterial, impertinent and would create massive prejudice to [Penn] in an action of this type." *Penn's Br. (DKT 37) at 1.* Penn argues that "[n]o Montana court has ever recognized the affirmative defense of 'advice of counsel' in an action brought under § 33-18-242, MCA." *Id. at 2.* He argues that Montana courts that have mentioned the defense and the cases that those courts have referenced have never held that "advice of counsel" is available as an affirmative defense. *Id. at 2-8.*

In response, National and Cincinnati concede that the "advice of

counsel" defense does not permit an insurer to escape liability under the UTPA. *Cincinnati's Resp. Br. (DKT 43) at 2-5; National's Resp. Br. (DKT 44) at 14-16.* But both argue that reliance on advice of counsel is a factor, among others, that may be considered when evaluating whether the insurer had a reasonable basis for contesting a claim. *Id.* National and Cincinnati also argue that Montana courts have long recognized the "advice of counsel" defense and that Penn is mistaken in representing that they have not. *DKT 43 at 5-11; DKT 44 at 5-14.*

In reply, Penn argues that National and Cincinnati, by admitting that "advice of counsel" is not an absolute defense to a UTPA claim, also effectively admit that "advice of counsel" cannot be an "affirmative" defense that would comprise an absolute avoidance of liability. *Penn's Reply Br. (DKT 46) at 1-6.* But Penn also concedes that "relevant testimony of an attorney, representing the insured, can form a part of the ... defense an insurer has in a UTPA claim in Montana, i.e., the reasonable basis in law or in fact defense." *Id. at 6* (emphasis omitted). In so conceding, Penn notes that National and Cincinnati "are miscomprehending the difference between an

affirmative defense and an evidentiary issue[ ]" and that if their counsel "has relevant evidence to provide to the jury that has some bearing on the reason the insurers refused to admit liability three years earlier, it is possible that the Court may allow that evidence to go to the jury" provided such evidence is admissible. *Id. at 7, 9-10.*

### 2. <u>Analysis</u>

Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial ...." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted). Whether to grant a motion to strike is within the Court's sound discretion. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), rev'd on other grounds by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Courts generally disfavor motions to strike because parties often use them to delay resolution of a case, *Rezek v. City of Tustin*, 2012 WL 5829928, at *9 (C.D. Cal. 2012) (citation

omitted), and because of the policy favoring resolution of disputes on the merits. *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000).

This motion presents primarily a procedural pleading question. It is not always clear whether a defense not enumerated in Rule 8(c) is an affirmative defense that must be plead. *See Wright and Miller, Fed. Prac. & Pro. 3d § 1271.* All parties here agree substantively that National and Cincinnati may present evidence as to the advice of their attorney as a part of their defense that they had a reasonable basis for contesting Penn's claim, but they may not escape liability based on such advice alone.

As noted, Penn seeks the Court's order striking the "affirmative defense" of "advice of counsel." An affirmative defense has been defined as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's ... claim, even if all the allegations in the complaint are true." BLACK'S LAW DICTIONARY 482 (9th ed. 2009).

Here, National and Cincinnati concede that their "advice of counsel" defense, asserted as an affirmative defense, will not, by itself,

allow them to escape liability under the UTPA. *DKT 43 at 2-5; DKT 44 at 14-16.* Rather, both argue that reliance on advice of counsel is a factor, among others, that may be considered when evaluating whether the insurer had a reasonable basis for contesting a claim. *Id.* Thus, they effectively concede that it is not an "affirmative defense" as contemplated by Fed. R. Civ. P. 8(c). *Compare LG.Philips LCD Co., Inc. v. Tatung* Co., 243 F.R.D. 133, 136-37 (D. Del. 2007) (holding advice of counsel not a genuine defense where it was but one factor relevant to willfulness determination in patent infringement case); *F.T.C. v. Moneymaker*, 2011 WL 3290379 (D. Nev. 2011) (advice of counsel defense held legally insufficient in action under Federal Trade Commission Act); *Graske v. Auto-Owners Ins. Co.*, 647 F.Supp.2d 1105, 1110 (D.Neb. 2009) (holding that advice of counsel is not a valid affirmative defense in insurance bad faith case).

Additionally, both defendants pleaded the affirmative defense that they "had a reasonable basis in fact or law for contesting the claim...." *DKT 33 at 5; 34 at 5.* Thus, by acknowledging that the "advice of counsel" defense is merely a part of their "reasonable basis"

affirmative defense, they have conceded that the "advice of counsel" affirmative defense is redundant.[4]

Accordingly, the Court recommends that Penn's motion be granted to the extent it seeks to strike "advice of counsel" as an affirmative defense in each Defendant's amended answer.

## III.  CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' joint motion for protective order (*DKT 31*) is GRANTED.  The Court will issue a Protective Order separately.  Also,

IT IS RECOMMENDED that Penn's motion for preliminary legal ruling and alternative motion in limine (*DKT 25*) be DENIED and that Penn's motion to strike both Defendants' advice of counsel affirmative defenses (*DKT 36*) be GRANTED as set forth herein.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Order and Findings and Recommendations of United

---

[4]It could be argued that this redundancy benefits Penn by providing clear notice of Defendants' intent to rely on advice of counsel as a defense to the bad faith charge, thereby waiving related attorney-client privileges.  *See Lamb v. District Court of Fourth Jud.* Dist.,234 P.3d 893, 894-95 (Mont. 2010); *Palmer v. Diacon v. Farmers Ins. Exchange*, 861 P.2d 895, 907 (Mont. 1993).

States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 4th day of January, 2013.

/S/ Carolyn S. Ostby
United States Magistrate Judge